## NICHOLAS & SHEPARD CO. v. HORSTAD et al.

Where, in an action for the price of a threshing machine outfit, the execution and delivery of the order were admitted in the answer, and the only defense raised in justification of defendant's repudiation thereof after plaintiff had fully complied with its terms was that the order had been procured by fraud and deception, defendants were not entitled to claim that the property had been fully settled for by notes not yet due, and that freight charges only were collectible.

Where the identical machinery and equipment described in an order therefor was shipped for the buyers from the seller's factory to the place of delivery, where it arrived in due time and was discovered on the track by one of the buyers, who was there prepared to receive it and called on the seller's agent to furnish assistance in unloading the same, there was a sufficient acceptance of the order by the seller.

An order given in good faith for the purchase of machinery is not revocable after being accepted by appropriate acts evincing mutuality of purpose to perform.

Where plaintiff's agent, while soliciting an order for machinery, stated that the buyers could not be compelled to take certain machinery previously ordered from others, as the order had not been legally approved, such statements were mere matters of opinion, on which the buyers had no right to rely.

(Opinion filed, October 30, 1906.)

Appeal from Circuit Court, Hamlin County. Hon. GEORGE H. MARQUIS, Judge.

Action by the Nichols & Shepard Company against Johannes Horstad and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*Case & Shurtleff,* for appellants. *Lee Stover* and *H. H. Potter* (*Horner & Stewart, of counsel*), for respondent.

FULLER, P. J. On this appeal the reversal of a judgment for respondent and new trial is sought in an action to enforce payment of $3,808, as the price and freight charges agreed upon for the purchase and delivery of a complete steam threshing outfit manufactured by respondent corporation and ordered by appellants on the 21st day of May 1903, to be shipped to them, on or about July 15th of that year, from Battle Creek, Mich., to the village of Bryant, in care of M. R. Baskerville, the representative of respondent, through the agency of whom the sale was effected. In the written order appellants agreed to receive the outfit upon its ar-

rival, paying all freight charges from the factory in cash, and in settlement for the property give respondent their four promissory notes, each for a stipulated amount payable at a specified time, together with 8 per cent interest from date until paid. They also obligated themselves to keep the property insured, and housed when not in use, and the contract was worded to operate as a mortgage thereon to secure full performance of all the terms of such contract. In case of a failure on their part to pay the freight and settle for the property at the time and place of delivery, the entire amount thus secured became immediately payable in cash, and the right to enforce the lien by a sale of the property, under the usual proceedings for the foreclosure of chattel mortgages, was expressly provided for. They also stipulated that they would not hold respondent responsible for any agreement not contained in the order and that no representations or guaranties which were not therein expressed had been made by the agents of the company transacting the business, and that the order was not subject to countermand by such purchasers. About three weeks subsequent to the execution and delivery of this order, and prior to the time of its transmission to respondent, and in response to the invitation of Mr. Baskerville, the salesagent through whom the business was transacted, appellants visited his place of business in the city of Watertown for the apparent purpose of personally examining a similar outfit. After substituting a more powerful and expensive engine of respondent's manufacture for the one described in the original order, they expressed entire satisfaction with everything, and said they were ready to settle for the outfit according to their agreement, and thereupon executed and delivered to Mr. Baskerville the notes and mortgage provided for therein. Shortly after the receipt of this modified order at the office of the company in Grand Rapids, Mich., and pursuant to agreement, the property was shipped from that point to Bryant, in this state, where it arrived on the 20th day of July, 1903. Appellant Horstad, who resided in that locality, immediately notified Mr. Baskerville of the fact that the shipment had thus reached its destination, and requested that a man be sent to assist him in unloading it from the car. The witness John Mc-

Dowell, who was sent to Bryant in response to such notice and request, testified as follows: "I live in Watertown, S. D. I am a machine salesman. I was in the employ of M. R. Baskerville in the year 1903. I recollect making a trip to Bryant with reference to a deal with Horstad and Smith on July 23d. I was told there was a telephone message, and they wanted a man to go down to Bryant and help unload a machine. This is the machine in question here, and I took the train for Elrod, and there took the Milwaukee, and arrived at Bryant in the morning. I had breakfast there, and stayed around until noon; but I could not find these parties, Horstad or Smith. So I made arrangements to unload this machine, and took a livery team, and drove out something like six miles, and saw Mr. Smith in regard to this machine. I asked him if he was the gentleman, and he said he was, and I introduced myself, and stated my business, and he said that he would have nothing to do with it. I told him that I had a man unloading it, and that it was probably unloaded by that time; and I wanted him to pay the freight and take the machine; but he refused to have anything to do with it, and told me I could tell Mr. Baskerville that, if he wanted to get anything out of it, he would have to fight for it. That was the rig in suit here. The rig at the time was in Bryant, on the car. I had to go back to Bryant, and had to telephone to Watertown to have them wire me the money to pay the freight, and I got a wire back, and I got the money from the bank through Mr. Baskerville and paid the freight. The amount of the freight was $146.52. I paid the freight with the money. This Smith I speak of was one of the defendants in this action. This was the 24th day of July, 1903."

To justify the repudiation of their contract appellants allege that the agents of respondent resorted to fraud and deception in procuring the execution and delivery of the same, and the testimony offered in support of the answer is to the effect that such agents knew that appellants had previously given a similar order to a Mr. Graham, acting for the J. I. Case Threshing Machine Company, and were informed by respondent's agents that the Case order had not been legally accepted and was not binding upon them. From the testimony of appellant Horstad we quote as follows: "After

the delivery of the order to Mr. Graham I had a conversation with Mr. Weir and Mr. Wilson. I knew that Mr. Wilson and Mr. Weir were with Mr. Baskerville. I remember the time that I saw them. It was the night before we gave the Case order. Mr. Wilson was at my place. I saw them a few days after I gave the order. I saw them about the 21st day of May. That was the day that the Nichols & Shepard order was signed. I saw them out at my farm. I talked with them about the Nichols & Shepard order. I asked them if Mr. Baskerville had come down, but he said that he did not have time, so that he had brought Mr. Weir along, the Nichols & Shepard agent, to get the order for their rig. We told him that we had given an order for the Case rig, and that we heard that it had been accepted. Mr. Weir asked us if we had written notice from the J. I. Case people, and I told him, 'No,' and then he said, 'Your order has not been accepted unless you have had written notice from the factory.' So we were talking backward and forward, and finally they got us to sign the order. * * * Q. What did they say about canceling the Case order? A. They said that the order was not accepted, and they could do nothing, so that we could cancel it without any bother, and that we would not have any trouble about getting our order canceled; that the Case Company would not stick us, and make us take it; that the Case Company could not do that. We told them that we did not want but one machine; that we could not buy any more, of course. He said, 'If you get the Nichols & Shepard machine, you will not get two machines.' I had never bought a threshing machine before that time. I had no prior experience in the handling of threshing machinery up to that time. Q. Did you believe what they told you to be true? A. Yes; I believed them. * * * Q. You may go on and state, Mr. Horstad, what induced you to sign the Nichols & Shepard order. A. They claimed that it was a much better machine, and was better built, and a much stronger machine, and that our Case machine would not be shipped; that the order would not be filled; and we were in a notion that we wanted a machine, and they claimed that this was a much better machine than the Case machine was." On cross-examination the witness testified in part as follows: "The written countermand, so called, was made on the 24th day of

July. It was made at Bryant. I was at my brother's place that morning, and Phelps came out to see me. Joe Parker and Mr. Case were with Phelps. It was not so very early in the morning when they came out to see me. It was about 8 or 9 o'clock. I had been in Bryant the day before. I had seen the machine on the car. I thought it was there for us. Q. That is what you brought in your team and the tank for, to take out the rig? You expected to unload the Nichols & Shepard rig, and take it out on the 23rd day of July? A. I did not expect to unload it; no sir. I expected that Baskerville would help unload it. I wired him to do that. I did not see a man there the next morning. Up to the 23d day of July we intended to take the machine—the Nichols & Shepard rig we had ordered. We got that far with it, and thought it was all right up to the 23d day of July. I then found out that we could not countermand the J. I. Case order that we had given before." Appellant Martin L. Smith testified, in his own behalf, that during the last twenty years he had been engaged in farming, but had owned an interest in a J. I. Case threshing machine for several years, and knew something about such machinery at the time he gave the order here sought to be enforced; that the agents of respondent, securing the same, told him that the Case outfit would not be shipped; that they could not make them take the machine; and that at the time he believed such statements of the agents to be true. Both Wilson and Weir denied upon the witness stand that they ever made any such statements, and swore positively that appellants stated to them, at the time the order was taken and subsequently, that they had the right to countermand the Case order at any time prior to the date of shipment. Mr. Baskerville also testified that Mr. Horstad and Mr. Smith both told him on the 21st day of June, at his office in the city of Watertown, that they had the right to countermand the J. I. Case order at any time before the machine was shipped, and that they were going to take the Nichols & Shepard outfit, just as they had agreed to do.

That the agents of the Case Company insisted upon full compliance with their contract, and entered into an undertaking to defray appellants' cost and expenses in the defense of any action respondent might institute, was apparently their only reason for re-

pudiation after the shipment had reached Bryant and had been tacitly accepted, and the fact that they actually received and settled for the other outfit is wholly immaterial. It is stated in the complaint that the notes and mortgage, executed and delivered by appellants to M. R. Baskerville for the use and benefit of respondent, are held subject to any disposition that the court may deem proper, and in the answer it is alleged that the same were obtained without consideration, and their cancellation and surrender to appellants is demanded. While no special ground for the objection to the admission in evidence of appellants' order for respondent's outfit was stated at the trial, it is now urged for a reversal that the same should have been rejected for the reason that such property had been fully settled for by notes, not yet due, and that this action was maintainable only for the unpaid freight charges. Even if a general objection would be sufficient to present the point for review, if within the issues, the contention is without merit, for the reason that the execution and delivery of the order is admitted in the answer, and the only defense attempted to be alleged in justification of its repudiation, after respondent had fully complied with its terms, is that the same was procured by fraud and deception.

The claim of counsel that the order was never approved by respondent is answered adversely to appellants by the undisputed fact that, pursuant to the terms thereof, the identical machinery and equipment described therein was shipped for appellants from the factory in Michigan to the village of Bryant, where it arrived in due time and was discovered on the track by appellant Horstad, who was there at the time prepared to receive the same and called upon the agent of respondent to furnish him assistance in unloading it from the car. Manifestly such consistent and appropriate acts amount to an unqualified acceptance of the order by respondent long before appellants attempted to countermand the same for the purpose of taking the Case outfit, but claiming that a fraud had been practiced upon them by the soliciting agents of respondent, and they have never intimated that the Nichols & Shepard machinry was not of superior quality and exactly what they ordered. That such an order taken in good faith is never revocable after being accepted by appropriate acts evincing mutuality of purpose

is a proposition sustained both by reason and authority. Mendall v. Willyoung (Sup.) 85 N. Y. Supp. 647; Houghwout v. Boisaubin, 18 N. J. Eq. 315; White v. Corlies, 46 N. Y. 467. "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." Rev. Civ. Code, § 1213.

Upon motion of counsel for respondent the court struck out certain testimony of appellants to the effect that the agents taking the Nichols & Shepard order stated that they could not be compelled to take the Case machinery, as the order for the same had not been legally approved; but as all such testimony, like that admitted and sent to the jury, was merely the expression of an opinion, upon which they had no right to rely, the same was properly excluded. While it was not competent for appellants to thus testify as to the view of the law taken by the agents, and detail similar statements and expressions of opinion purporting to have been made by Mr. Baskerville, long after the order had been taken, their attorneys ultimately succeeded in getting to the jury with all the testimony stated in this opinion, and appellants are in no position to complain.

Assuming that a valid defense is stated in the answer, and that the testimony offered and received on behalf of appellants was entirely competent, there was a conflict in the evidence which the jury solved in favor of respondent, and no fault is found with the instructions of the court. Being fully convinced from a careful study of the entire record that no errors of law occurred at the trial, and that the assignments of error relating to the reception and exclusion of evidence present nothing to justify a reversal, the judgment appealed from is affirmed.

CORSON, J., took no part in this decision.